IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MARK ANTHONY POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-CV-275 |
| | ) | (Collier/Carter) |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income under Title XVI of the Social Security Act.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of:

(1) The plaintiff's Motion for Judgment on the Administrative Record (Doc. 15), and

(2) The defendant's Motion for Summary Judgment (Doc. 18)

For the reasons stated herein, I **RECOMMEND** the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

Plaintiff's Age, Education, and Past Relevant Work Experience

Plaintiff was fifty-two years old when the ALJ issued his decision (Tr. 115). Plaintiff completed the ninth grade (Tr. 132), and worked as a waiter, short order cook, material handler, landscape laborer, construction worker, animal caretaker, and automobile wrecker (Tr. 44, 148).

Application for Benefits and Findings

On July 19, 2010, Plaintiff protectively filed an application for Supplemental Security Income ("SSI")[1] alleging a disability onset date of December 31, 2007 (Tr. 115-19). After Plaintiff's claim was denied initially and upon reconsideration (Tr. 54-57, 61-63), the Administrative Law Judge ("ALJ") held a hearing on January 10, 2012, and issued an unfavorable decision on March 12, 2012 (Tr. 11-24, 29-48). The ALJ found Plaintiff had not been under a disability through the date of the decision (Tr. 11-24). Plaintiff requested review of the ALJ's decision, and the Appeals Council denied his request (Tr. 1-6), and the Commissioner's decision is ripe for review under 42 U.S.C. § 1383(c)(3).

Standard of Review - Findings of ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that he/she cannot return to his/her former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering his/her age, education, and work

[1] SSI benefits are not payable for the month, or any month prior to the month, in which the SSI application is filed. See 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335. In this case, Plaintiff's application was filed in July 2010 (Tr. 115-19). Accordingly, Plaintiff would not be eligible for SSI benefits before July 2010.

experience. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision that plaintiff was not disabled, the ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since July 19, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following "severe" impairments: degenerative disc disease of the cervical spine; chronic obstructive pulmonary disease (COPD); obesity; and hypertension (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that since July 1, 2010, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the able [sic] to occasional maneuver the spine for bending and twisting with no climbing or crawling or prolonged exposure to respiratory irritants. He can understand, remember and carry out simple job instructions and perform simple and repetitive tasks.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on __________ __, 1960, and was 50 years old, which is defined as an individual "closely approaching advanced age" on the date the application was filed (20 CFR 416.964 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. The claimant has not acquired any work skills transferable to work within the residual functional capacity (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are full-time jobs that exist in significant numbers in the regional/national economy that the claimant can perform (20 CFR 416.969 and 4169.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act and implementing regulations, since July 19, 2010, the date the application was filed (20 CFR 416.920(a)-(g)).

Tr. 13-24.

## Issues Raised

I. The ALJ failed to properly consider the opinion of the consultative examining physician, Dr. Emelito Pinga, and further failed to resolve significant inconsistencies between this opinion and his decision.

II. The ALJ erred by providing an erroneous basis for rejecting the opinion of Marwan Moughrabi, NP-C, and by failing to evaluate this opinion in accordance with SSR 06-3p.

III. The ALJ erred in failing to properly consider Plaintiff's cervical spinal impairments, and in further misrepresenting and/or mischaracterizing the evidence regarding these impairments in his decision.

IV. The credibility of the Plaintiff's statements was not properly evaluated and assessed as required by Social Security Ruling 96-7p.

Relevant Facts

Plaintiff presented for a consultative medical examination with Dr. Emelito Pinga in October 2010 at the request of SSA (Tr. 182). Dr. Pinga noted that Plaintiff was obese, with a height of 70 inches and a weight of 247 pounds, equating to a body mass index of at least 35.4. Dr. Pinga also noted he had dyspnea on exertion in the office. His examination revealed some limited range of motion of Plaintiff's cervical spine, distant breath sounds bilaterally, few wheezes and rhonchi over both lung fields, some decreased range of motion of the shoulders, elbows, wrists, fingers, lumbar spine, hips, knees, and ankles (Tr. 184-185). A chest x-ray revealed calcifications in the hilar region which favor healed granulomatous disease, as well as some hyperinflation of the lungs. Pulmonary vascularity was normal (Tr. 189). On pulmonary function testing, it was noted Plaintiff was unable to blow for six seconds despite being cooperative and expending maximum effort (Tr. 187-188). Based upon his examination and review, Dr. Pinga diagnosed Plaintiff with chronic obstructive pulmonary disease and emphysema, hyperlipidemia, hypertension, and obesity (Tr. 185). Dr. Pinga further stated that Plaintiff was limited to sitting six hours, standing five hours, and walking four hours in an eight-hour workday, with only

occasional lifting up to fifteen pounds, and the need for rest periods of fifteen minutes within each one-hour interval (Tr. 186).

Plaintiff returned for more pulmonary function testing at the request of SSA in January 2011. This testing revealed moderate restriction with no significant improvement using bronchodilators, and his lung age was estimated to be ninety-one years (Tr. 194-195).

In April 2011, Plaintiff was hospitalized for several days related to his respiratory difficulties after experiencing progressively increasing, severe shortness of breath (Tr. 230, 240). He also reported neck pain and intermittent headache, as well as joint pain, arthralgias and paresthesia of the extremities. Objective examination revealed considerable shortness of breath on very minimal exertion or at rest, and it was noted that he felt better with oxygen. Examination also revealed emphysematous chest with poor air exchange, bilateral harsh breath sounds, scattered rhonchi, somewhat tense and distended abdomen, and osteoarthritis of the extremities. X-rays of his cervical spine from a couple of years prior showed anterolisthesis of C4 on C5 with moderate multiple degenerative disease. The impression included COPD with acute exacerbation, probable degenerative disk disease causing some disk problems with the neurological compromise, distention of the abdomen, and hyperglycemia versus diabetes mellitus. While he had initially been placed on oxygen due to his breathing difficulties, which he felt helped, it was decided that he did not qualify for oxygen on room air. He was admitted for increasing shortness of breath but his blood gases were fairly satisfactory. In addition, it was stated that his elevated blood sugar was due to diabetes with elevated hemoglobin A1c. (Tr. 228, 230-231). A progress note from the following day states that he also had problems with insomnia, and noted that he had "fairly advanced COPD." He was still on nasal oxygen at two liters, and examination revealed

emphysematous findings (Tr. 250). Due to his significant neck and upper extremity symptoms, an MRI of his cervical spine was performed on April 6, 2011 which revealed abnormal alignment with reversal of lordosis indicating paraspinal muscle spasms, anterior spondylitic spurring spanning from C3 through C6 intervals, disc osteophyte complex at C4-5 with complete effacement of the thecal sac and mild impingement on the ventral cervical spinal cord, as well as moderate bilateral neural foraminal stenosis, and a right eccentric disc osteophyte complex at C5-6 with severe right foraminal stenosis and effacement of the ventral thecal sac. (Tr. 250, 255-257).

Follow-up treatment notes from April 2011 show a new diagnosis of diabetes after his hospitalization. He reported respiratory difficulties, his stomach "stays hard," muscle spasms, insomnia, and headaches (Tr. 274). He was assessed with chronic obstructive pulmonary disease (COPD), muscle spasms, headaches, gastroesophageal reflux disease, high blood pressure, and insomnia (Tr. 275).

Due to his neck and upper extremity symptoms, Plaintiff was referred for physical therapy. He reported his symptoms began about a year and a half prior, and had been worsening since then. He also reported weakness in his hands, right worse than left, with occasional dropping things, as well as headaches. He estimated his pain ranged from a zero to eight out of ten, and he also reported occasional numbness and tingling in his bilateral fingers. Objectively, he was noted to have decreased bilateral hand strength, decreased cervical spine range of motion, and decreased posture (Tr. 269-271).

Plaintiff returned in May 2011 with complaints of constant headache, as well as stomach pain and sleep disturbance. He was diagnosed with tension migraine headache, severe muscle

spasms, degenerative disc disease of the cervical spine, and COPD, and his medications were adjusted (Tr. 267).

He again returned in July 2011 with persistent complaints of respiratory difficulties, insomnia, headaches with migraines in the morning, and upper back spasms and pain. He was also noted to have bilateral scattered rhonchi, and his blood pressure was elevated, at 150/110. He was again assessed with muscle spasms, cervical degenerative disc disease with chronic neck pain, headaches, COPD, insomnia, and nicotine dependence, and his medications were adjusted (Tr. 263). It also appears a nebulizer was prescribed for treatment of his persistent respiratory symptoms and difficulties as well as Hydrocodone for pain (Tr. 264).

In August 2011, Plaintiff returned again with persistent complaints of chronic neck and head pain with frequent headaches. He was noted to be tender in the spine with severe foraminal stenosis at C5-6, and his headaches were thought to be secondary to his cervical disc disease. In addition, he was diagnosed with chronic pain and COPD, and his medications were increased (Tr. 262).

In October 2011, Plaintiff was admitted to the hospital for emergency cholecystectomy after presenting with progressive, severe upper right quadrant pain with nausea and vomiting ( Tr. 278-318). On initial presentation, he was noted to have wheezing with an oxygen saturation of only 91% on room air, as well as very high blood pressure of 221/109 (Tr. 289, 306). He was given oxygen supplementation, as it was noted that his oxygen saturation remained low at only 93% (Tr. 292, 308). After his gallbladder was removed and he was stable, he was discharged with diagnoses of acute cholecystitis and calculus of gallbladder, chronic airway obstruction, cervical spondylosis without myelopathy, esophageal reflux, diaphragmatic hernia, pure

hypercholesterolemia, and tobacco use disorder (Tr. 279). He was instructed not to lift anything over fifteen pounds, and to follow up with his primary care doctor (Tr. 296).

In December 2011, Plaintiff's treating nurse practitioner, Marwan Moughrabi, NP-C, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) regarding Plaintiff's impairments (Tr. 322-327). Mr. Moughrabi assessed Mr. Powell with limitations to lifting up to twenty (20) pounds occasionally and lifting no more than ten (10) pounds occasionally (Tr. 322). He further assessed limitations to sitting up to three (3) hours, standing for one (1) hour, and walking less than one (1) hour during an eight-hour workday, as well as only occasional use of his hands bilaterally for handling, fingering, feeling, and pushing/pulling, as well as only frequent reaching bilaterally in any direction (except only occasional overhead reaching with the left arm) (Tr. 324). This opinion included limitations to never performing postural activities, except for occasional stooping, and no exposure to heights, moving mechanical parts, humidity and wetness, dust odors, fumes and pulmonary irritants, extreme heat or cold, and vibrations (Tr. 325-326). Mr. Moughrabi indicated these limitations had lasted or were expected to last for at least twelve consecutive months (Tr. 327).

In January 2012, Plaintiff underwent a sleep study that revealed many desaturation events, with his lowest oxygen saturation during the study of 83%. Despite these numerous desaturation events and difficulties, it was assessed that he did not qualify for nocturnal oxygen under Medicare guidelines (Tr. 329-331).

## Analysis

I. The evaluation of the consultative examining physician, Dr. Emelito Pinga, and resolution of inconsistencies between the opinion and the ALJ's decision.

Plaintiff first argues the ALJ erred in failing to address or resolve the significant inconsistencies between his RFC finding and the medical opinions of record in the Plaintiff's claim, including the opinions of the consultative examining physician, Dr. Emelito Pinga. The ALJ stated that "significant weight" was given to Dr. Pinga's assessment, but Plaintiff argues he nevertheless failed to address or resolve these significant inconsistencies in reaching his RFC finding (Tr. 14, 21).

The ALJ is required to evaluate every medical opinion received. See 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations specifically provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." See 20 C.F.R. §§ 404.1527(d), 416.927(d). Moreover, the ALJ is required to state with particularity the weight she gave different medical opinions and the reasons therefore. See SSR 96-8p. As Social Security Ruling 96-8p states, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id. (emphasis added). Finally, the regulations state that, "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." See 20 C.F.R. 404.1527(c)(1).

The consultative medical examination with Dr. Emelito Pinga was conducted in October 2010 at the request of SSA (Tr. 182). Dr. Pinga noted Plaintiff was obese, with a height of 70 inches and a weight of 247 pounds, equating to a body mass index of at least 35.4. Dr. Pinga also noted that he had dyspnea on exertion in the office. His examination revealed some limited range of motion of Plaintiff's cervical spine, distant breath sounds bilaterally, few wheezes and rhonchi over both lung fields, some decreased range of motion of the shoulders, elbows, wrists, fingers,

lumbar spine, hips, knees, and ankles (Tr. 184-185). A chest x-ray revealed calcifications in the hilar region which favor healed granulomatous disease, as well as some hyperinflation of the lungs. Pulmonary vascularity was normal (Tr. 189). On pulmonary function testing, it was noted that he was unable to blow for six seconds despite being cooperative and expending maximum effort (Tr. 187-188). Based upon his examination and review, Dr. Pinga diagnosed Plaintiff with chronic obstructive pulmonary disease and emphysema, hyperlipidemia, hypertension, and obesity (Tr. 185). Dr. Pinga further stated that Plaintiff was limited to sitting six hours, standing five hours, and walking four hours in an eight-hour workday, with only occasional lifting up to fifteen pounds, and the need for rest periods of fifteen minutes within each one-hour interval (Tr. 186).

In addressing this evidence in his decision, the ALJ stated that he gave "significant weight" to Dr. Pinga's assessment, except for his opinion that Mr. Powell would require a fifteen-minute work break during each hour. The only reason provided for rejecting that portion of Dr. Pinga's opinion was that it "is not supported by his own examination report or the record as a whole." (Tr. 21). However, the ALJ failed to provide any explanation or basis for this conclusory finding. Dr. Pinga's examination revealed limited range of motion of Plaintiff's cervical spine, distant breath sounds bilaterally, wheezes and rhonchi over both lung fields, some decreased range of motion of the shoulders, elbows, wrists, fingers, lumbar spine, hips, knees, and ankles. Tr. 184-185. He noted that Plaintiff exhibited shortness of breath on exertion in the office. As Plaintiff argues, there was other evidence in the record including the April 6, 2011, MRI of Plaintiff's cervical spine and his persistent complaints regarding his neck pain, headaches, and upper extremity difficulties which are all consistent with and support such a limitation (Tr. 255-257). In addition there was a very limiting assessment of ability to do work-related activities

by Marwan Moughrabi, NP-C, his treating nurse practitioner. However, the ALJ failed to address the consistency of this evidence with Dr. Pinga's limitation to a fifteen minute rest period every hour, and he failed to provide any explanation whatsoever for his conclusory finding to the contrary. On the basis of the record as a whole, I conclude the ALJ did not give a sufficient basis for rejecting the more limiting portion of Dr. Pinga's opinion. The only evidence in the record to the contrary was the evaluation of the State Agency Physicians who never saw Plaintiff but based their opinion on a partial record review. Dr. Kushner's opinion allowing a full range of light work was given on February 2, 2011, prior to the MRI of April 6, 2011. The MRI revealed abnormal alignment with reversal of lordosis indicating paraspinal muscle spasms, anterior spondylitic spurring spanning from C3 through C6 intervals, disc osteophyte complex at C4-5 with complete effacement of the thecal sac and mild impingement on the ventral cervical spinal cord, as well as moderate bilateral neural foraminal stenosis, and a right eccentric disc osteophyte complex at C5-6 with severe right foraminal stenosis and effacement of the ventral thecal sac. Other evidence after Dr. Kushner's opinion includes the May 2011 incident where Plaintiff presented with complaints of constant headache, as well as stomach pain and sleep disturbance. He was diagnosed with tension migraine headache, severe muscle spasms, degenerative disc disease of the cervical spine, and COPD. In July 2011 Plaintiff had persistent complaints of respiratory difficulties, insomnia, headaches with migraines in the morning, and upper back spasms and pain. He was also noted to have bilateral scattered rhonchi, and his blood pressure was elevated, at 150/110. He was again assessed with muscle spasms, cervical degenerative disc disease with chronic neck pain, headaches, COPD, insomnia, and nicotine dependence (Tr. 263). It also appears a nebulizer was prescribed for treatment of his persistent respiratory symptoms and difficulties as well as

Hydrocodone for pain (Tr. 264). Finally in August 2011, Plaintiff returned again with persistent complaints of chronic neck and head pain with frequent headaches. He was noted to be tender in the spine with severe foraminal stenosis at C5-6, and his headaches were thought to be secondary to his cervical disc disease. In addition, he was diagnosed with chronic pain and COPD, and his medications were increased (Tr. 262). None of that medical evidence was reviewed by the non-examining state agency physician, Dr. Kushner, or for that matter by Dr. Pinga. The ALJ gave great weight to Dr. Kushner's opinion because it was most consistent with the record as a whole. However, it did not consider much of the record evidence in this case and cannot therefore be substantial evidence to support the conclusion of the ALJ when the treating or consulting physicians both have opined Plaintiff incapable of light work.

For those reasons, I agree with Plaintiff that the ALJ erred in relying upon the opinions of the reviewing, non-examining physician's opinions over those of Dr. Pinga (or Marwan Moughrabi, NP-C, as discussed below). As Plaintiff notes, the regulations specifically provide that, "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. 404.1527(c)(1). Moreover, the ALJ again provided a merely conclusory statement that this opinion was "most consistent with the record as a whole." (Tr. 21). Other than the opinion of Dr. Kushner whose opinion was made before significant amounts of the medical record existed, there are only disabling opinions. In accordance with the above, the reasons provided by the ALJ for rejecting the opinion of Dr. Pinga are insufficient.

Based on the foregoing, I conclude the ALJ's decision is not supported by substantial evidence and must be remanded.

II. <u>The rejection of the opinion of Marwan Moughrabi, NP-C, and the failure to evaluate this opinion in accordance with SSR 06-3p.</u>

Plaintiff next argues the opinion of the nurse practitioner was improperly evaluated and rejected. In his evaluation of the opinion evidence of record, the ALJ implicitly rejected the opinions of Marwan Moughrabi, NP-C, Mr. Powell's treating nurse practitioner at Healthforce Primary Care although the ALJ appears to have concluded it was the opinion of Dr. Baldwin (<u>See</u> Tr. 20, 262-277, 322-328). Plaintiff also argues the ALJ failed to assign any specific weight to Marwan Moughrabi's opinions or even evaluate these opinions as those of Plaintiff's treating nurse practitioner, as required by Social Security Ruling 06-3p. (See Tr. 20-21). .

First, the ALJ voiced his confusion regarding this opinion, stating that "the source that provided the forms is not clear." (Tr. 20). He then noted (correctly) that Plaintiff alleged in the prehearing memorandum that Marwan Moughrabi of Healthforce Primary Care offered these opinions (Tr. 20; Tr. 173-174). The ALJ then noted that, at the hearing, the claimant identified Dr. Mary Baldwin as the author of the medical source statements." (Tr. 20). However, a review of the hearing transcript does not show that Plaintiff stated Dr. Baldwin completed these assessments; rather, he stated that "She's the one who originally diagnosed me with it. But I go to a different doctor now, I go to a Dr. Marwan." (Tr. 34). It appears Mr. Powell was indicating that Dr. Baldwin did not complete these forms, but rather "Dr. Marwan" completed them (although Marwan Moughrabi is not an M.D.) (Tr. 33-35). At the very least it is unclear why the ALJ concluded it to be Dr. Baldwin in spite of counsel's clear assertion that it was Marwan Moughrabi's opinion.

The ALJ went on to explain why these opinions should not be given any weight "[i]f Dr. Baldwin is in fact the author." He based it on the remoteness of Dr. Baldwin's treatment from 2008 (Tr. 20). I conclude it is likely that Marwan Moughrabi was the author and if so his opinion would still have been entitled to be considered.

The ALJ failed to evaluate or address these opinions under Social Security Ruling 06-3p, as required for evaluating the opinions of treating nurse practitioners because he appears to have concluded it was not his opinion. The ALJ did state that "little weight" was given to the opinions "[r]egardless of who provided the statements… because they are not supported by the clinical records." However, the ALJ again failed to provide any basis for this completely conclusory finding. Rather, the ALJ merely recited the limitations assessed in Mr. Moughrabi's opinion and stated that he "cited no medical findings" to support the opinion (Tr. 20). The ALJ failed to provide any specific reasons or offer any contradictory evidence to discredit the opinions of Mr. Moughrabi. Furthermore, the ALJ failed to evaluate this opinion using the required regulatory factors, as required by Social Security Ruling 06-3p.

Social Security Ruling 06-3p requires that Marwan Moughrabi's opinion receive the same consideration as an acceptable medical source and be weighed using the **regulatory factors**:

> Depending on the particular facts in a case**, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source.** For example**, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often** than the treating source **and has provided better supporting evidence and a better explanation for his or her opinion.** Giving more weight to the opinion from a medical source who is not an 'acceptable medical source' than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p.

(Emphasis added). Ruling 06-3p also states that:

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, **medical sources who are not 'acceptable medical sources,' such as … therapists…, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as *impairment severity* and *functional effects***, along with the other relevant evidence in the file.

(Emphasis added).

As Plaintiff notes, the Sixth Circuit has emphasized the requirements of SSR 06-3p, stating that "with the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists." Cruse v. Commissioner, 502 F. 3d 532, 541 (6th Cir. 2007); see SSR 06-3p. The opinion refers to SSR 06-3p which states that "opinions from these medical sources who are not technically deemed 'acceptable medical sources,' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." Id. The Court goes on to state that "further, the ruling explains that opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." Id. The ALJ clearly failed to evaluate Marwan Moughrabi's opinion in this case using the required regulatory factors because he appears to have concluded Dr. Baldwin was the author of the opinion.

As Plaintiff argues, the medical records tend to support the assessment by Marwan Moughrabi. Mr. Moughrabi's treatment notes show Plaintiff's difficulties with his COPD (including bilateral scattered rhonchi); severe neck pain and muscle spasms with symptoms into his upper extremities; chronic, persistent severe headaches/migraines on a frequent basis that Mr. Moughrabi felt was related directly to his cervical spine impairments; and insomnia (Tr. 262-277). Due to his persistent neck and upper extremity symptoms, Mr. Moughrabi referred Plaintiff for physical therapy (Tr. 269-270). He reported his symptoms began about a year and a half prior, and had been worsening since then. He also reported weakness in his hands, right worse than left, with occasional dropping things, as well as headaches. He estimated his pain ranged from a zero to eight out of ten, and he also reported occasional numbness and tingling in his bilateral fingers. Id. Objectively, he was noted to have decreased bilateral hand strength, decreased cervical spine range of motion, and decreased posture (Tr. 270-271). The finding in these treatment notes from Mr. Moughrabi provide support to his opinion, but the ALJ failed to consider or address this in his decision.

Further, other medical records are consistent with and provide support to Mr. Moughrabi's assessment. For example, the consultative examination revealed some limited range of motion of Plaintiff's cervical spine, distant breath sounds bilaterally, wheezes and rhonchi over both lung fields, and decreased range of motion of the shoulders, elbows, wrists, fingers, lumbar spine, hips, knees, and ankles (Tr. 184-185). He has also had significant difficulties with his respiratory impairments and COPD noted in the hospital records (Tr. 225-261, 278-318, 329-331). Furthermore, the MRI of his cervical spine revealed abnormal alignment with reversal of lordosis indicating paraspinal muscle spasms, anterior spondylitic spurring spanning from C3 through C6

intervals, disc osteophyte complex at C4-5 with complete effacement of the thecal sac and mild impingement on the ventral cervical spinal cord, as well as moderate bilateral neural foraminal stenosis, and a right eccentric disc osteophyte complex at C5-6 with severe right foraminal stenosis and effacement of the ventral thecal sac (Tr. 255-257) (emphasis added). This MRI appears to be to be objective evidence confirming Plaintiff's cervical spine impairments which are of a severity which could cause the symptoms he alleges, including the intensity, persistence, and limiting effects thereof. This evidence appears to be consistent with and provides substantial support for the limitations assessed by Mr. Moughrabi. Nevertheless, the ALJ failed to address or even consider the consistency of this evidence with his opinions.

Based on the foregoing, I conclude the ALJ's decision is not supported by substantial evidence and must be remanded.

III. The assessment of Plaintiff's cervical spinal impairments.

Plaintiff next argues the ALJ erred in failing to properly consider his cervical spinal impairments, and further misrepresented and/or mischaracterized the evidence regarding these impairments in his decision. In addressing Plaintiff's cervical spine impairments, the ALJ stated that "[t]his is a recently identified impairment, and there is no evidence that the claimant's cervical spine was particularly symptomatic as there is no evidence that he sought treatment for his neck or headaches prior to the April/May 2011, [sic] timeframe." (Tr. 17). The ALJ stated that "the first evidence that he complained of neck pain occurred after he obtained an MRI of the neck in April 2011 and this showed degenerative disc disease of the cervical spine." (Tr. 18). The ALJ then found that Plaintiff's allegations failed to satisfy both parts of the symptoms analysis mandated by SSR 96-7p "due to the absence of significant objective and laboratory medical findings which

provide confirmation of an impairment(s) that could reasonably be expected to cause the subjective complaints." (Tr. 19). He "allowed that [Mr. Powell] may have some mild discomfort associated with his spine." (Tr. 17). SSR 96-8p provides that the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." As Plaintiff argues however, the above statements are not supported by the record.

First, while the ALJ stated that Plaintiff had difficulties or sought treatment for his neck pain and headaches prior to April or May 2011, the treatment notes from April show that x-rays of his cervical spine from a couple of years prior showed anterolisthesis of C4 on C5 with moderate multiple degenerative disease (Tr. 231). The ALJ stated that Plaintiff did not complain of neck pain until after his MRI was performed which showed degenerative disc disease (Tr. 18). However, as Plaintiff argues, this MRI would not have been performed unless Plaintiff was reporting significant symptoms and, in fact, the MRI report specifically states that it was being performed due to "neck pain radiating into the shoulders, both hands and both upper extremities." (Tr. 255); (see also Tr. 230-231) (documenting his complaints). Further, the ALJ's finding that there is no significant objective evidence confirming an impairment that could reasonably be expected to cause the subjective complaints is contradicted by the MRI of Plaintiff's cervical spine (See Tr. 19). Significantly, this MRI revealed abnormal alignment with reversal of lordosis indicating paraspinal muscle spasms, anterior spondylitic spurring spanning from C3 through C6 intervals, disc osteophyte complex at C4-5 with complete effacement of the thecal sac and mild impingement on the ventral cervical spinal cord, as well as moderate bilateral neural foraminal stenosis, and a right eccentric disc osteophyte complex at C5-6 with severe right foraminal stenosis

and effacement of the ventral thecal sac (Tr. 255-257). This is certainly "significant objective evidence" confirming Plaintiff's cervical spine impairment which could reasonably be expected to cause his subjective complaints. As such, the ALJ's conclusory assertion to the contrary is inconsistent with the medical evidence of record. Likewise, the ALJ's finding that this impairment results in only "some mild discomfort associated with his spine" is not supported, especially in light of these extremely significant MRI findings and Mr. Powell's persistent complaints of neck pain, headaches, and upper extremity pain and numbness since at least April 2011 (See Tr. 17).

IV. The Credibility Assessment.

Finally, Plaintiff argues Plaintiff's credibility was not properly evaluated and assessed as required by Social Security Ruling 96-7p. Because I am recommending remand of this case for other reasons, I will not address this issue in detail.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude the findings of the ALJ and the decision of the Commissioner are not supported by substantial evidence when one looks at all of the evidence of the record. However, evidence of disability is not overwhelming and there is some evidence to support the Commissioner therefore remand is the appropriate remedy.

Accordingly, I RECOMMEND[2] that:

1. Plaintiff's Motion for Judgment on the Administrative Record (Doc. 15) seeking judgment as a matter of law be GRANTED in PART to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment (Doc. 18) be DENIED.

3. The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation (1) to further evaluate the opinion of the consultative examining physician, Dr. Emelito Pinga and (2) to confirm the source of the Medical Source Statement of Ability to do Work-Related Activities (Physical) and reassess the weight to be given that opinion and (3) to obtain an updated review by a State Agency physician that considers all of the medical evidence of record and (4) reassess the case including the Plaintiff's allegations of pain in light of all of the evidence.

S /*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).